IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:20-CV-169-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA – INTERNAL REVENUE SERVICE, | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | ORDER |
| FABIO ALICEA and SARAH J. ZABEK, | ) ) ) | |
| Appellees.[1] | ) | |

This bankruptcy appeal is before the court on appellant's appeal from the final order of the bankruptcy court allowing the appellees' objection to a claim in bankruptcy. See In re: Fabio Alicea and Sarah J Fabek, No. 19-05841-5-SWH (E.D.N.C. Br. Aug. 24, 2020). The appeal has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the bankruptcy court's order is affirmed.

**STATEMENT OF THE CASE**

Appellees filed a voluntary Chapter 13 bankruptcy petition, as a married couple, on December 19, 2019. (DE 7-1 at 3-16). Appellant filed a proof of claim, as last amended on June 19, 2020, (hereinafter, the "claim"), which includes the amount of $30,096.37 as an unsecured priority claim in the category of "[t]axes or penalties owned to governmental units." (DE 7-5 at 3). Of this amount, appellant identified $2,409.00 as tax due under the category of

---

[1] Although the caption of the docket designates Joseph A. Bledsoe, III, Chapter 13 Trustee, ("Trustee") as an additional appellee, the Trustee has not entered an appearance in this case as an appellee nor filed an appellee brief or other papers. Therefore, for purposes of the instant order, the court constructively amends the caption of this order to refer to appellees as comprising Fabio Alicea and Sarah J. Zabek.

"excise/income" tax assessed May 18, 2020, for the tax period ending December 31, 2018. (DE 7-5 at 4).

Appellees filed an objection to the claim, asserting in pertinent part that the "asserted . . . tax on the claim relates to the [appellees'] health care individual responsibility penalty." (DE 7-1 at 83). As part of their objection, appellees included an excerpt from their tax return, which lists $2,409.00 as the amount of a "[h]ealth care individual responsibility" in the category of "Other Taxes" on line 61. (DE 7-1 at 85).

Whether this assessed amount properly may be characterized as a tax subject to priority status in bankruptcy is the subject of this appeal. For ease of reference, this amount is specified hereinafter as the "shared responsibility payment," which is part of the Affordable Care Act's "[r]equirement to maintain minimum essential coverage" in health insurance, the terms of which will be discussed in further detail in the analysis herein. 26 U.S.C. § 5000A(a), (b).

In their objection to the claim, appellees contended that this shared responsibility payment is a penalty that "does not qualify for priority status and should be reclassified as part of the unsecured general claim." (DE 7-1 at 83). Appellees thus sought to reclassify the claim, in pertinent part, as including an unsecured priority claim in the amount of only $27,687.37 (that is, the original priority claim amount, $30,096.37, minus the amount of the shared responsibility payment, $2,409.00).

On August 24, 2020, in the order that is subject of the instant appeal, the bankruptcy court allowed appellees' objection to the claim, reclassifying the shared responsibility payment as part of the unsecured general claim and reducing the amount of the unsecured priority claim. In particular, the bankruptcy court reasoned as follows:

> Although the IRS has handed up decisions of other courts that hold to the contrary, this court sees no reason to reconsider its decision in In re Parrish, 583 B.R. 873

2

>(Bankr. E.D.N.C. 2018), vacated as moot, 18-CV-173-FL (E.D.N.C. Nov. 30, 2018) or to stray from the holdings by other courts in this district on the issue, see In re Albracht, No. 19-03672-5-DMW (Bankr. E.D.N.C. Mar. 31, 2020), In re Bailey, No. 18-03328-5-DMW (Bankr. E.D.N.C. May 24, 2019), vacated as moot, 19-CV-226-D (E.D.N.C. Nov. 21, 2019), In re Pittman, No. 20-00490-5-JNC (Bankr. E.D.N.C. July 27, 2020), and finds that the [shared responsibility payment] is a penalty and not an excise tax, and that it is not precluded from so finding by National Federation of Independent Business v. Sebelius, 567 U.S. 519 (2012).

(DE 1 at 5).

This appeal followed.

## COURT'S DISCUSSION

Section 507 of the bankruptcy code specifies priority of certain "expenses and claims," including, as pertinent here:

>(8) Eighth, allowed unsecured claims of governmental units, only to the extent that such claims are for--
>
>>(A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition. . . .
>>
>>(B) a property tax . . . . ;
>>
>>(C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;
>>
>>(D) an employment tax on a wage, salary, or commission . . . . ;
>>
>>(E) an excise tax on--
>>
>>>(i) a transaction occurring before the date of the filing of the petition for which a return, if required, is last due, under applicable law or under any extension, after three years before the date of the filing of the petition; or
>>>
>>>(ii) if a return is not required, a transaction occurring during the three years immediately preceding the date of the filing of the petition;
>>
>>(F) a customs duty arising out of the importation of merchandise. . . . or
>>
>>(G) a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss. . . .

11 U.S.C. § 507(a)(8)(emphasis added) (hereinafter, the "priority provision"). In brief, this priority provision "extends priority to various types of taxes." New Neighborhoods, Inc. v. W. Virginia Workers' Comp. Fund, 886 F.2d 714, 719 (4th Cir. 1989).

"[T]here is a need carefully to limit priority claims in bankruptcy." Id. "The presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among the creditors." Ford Motor Credit Co. v. Dobbins, 35 F.3d 860, 865 (4th Cir. 1994). "Thus, statutory priorities must be narrowly construed." Id. "Further, ambiguities in the Code are generally resolved in favor of the debtor." New Neighborhoods, 886 F.2d at 719. "[I]f one claimant is to be preferred over others, the purpose should be clear from the statute." Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co., 547 U.S. 651, 667 (2006).

In this case, appellant contends that the shared responsibility payment is either an income tax or an excise tax, under the meaning of 11 U.S.C. § 507(a)(8)(A) or (E).[2] In order to determine whether the shared responsibility payment meets the requirements of an income tax or an excise tax under this priority provision, the court first considers the meaning of the terms in the Bankruptcy Code, followed by an analysis of the meaning of the shared responsibility payment.

The Bankruptcy Code does not define the phrases "tax on or measured by income," and "excise tax on . . . a transaction." Id. § 507(a)(8)(A), (E). In addition, neither the United States Court of Appeals for the Fourth Circuit nor the United States Supreme Court has interpreted the meaning of the phrase "tax on or measured by income." Id. § 507(a)(8)(A). However, they have interpreted the meaning of "tax" and "excise tax," more generally, for purposes of the Bankruptcy Code. "[F]or the purposes of priority under the Bankruptcy Act, taxes include 'those pecuniary burdens laid upon individuals or their property, regardless of their consent, for the purpose of

---

[2] The court addresses further below appellant's alternative suggestion that it need not specify the type of tax that is subject of priority, so long as it is not classified as a penalty.

defraying the expenses of government or of undertakings authorized by it.'" New Neighborhoods, 886 F.2d at 718 (quoting City of New York v. Feiring, 313 U.S. 283, 285 (1941)). "An excise tax is an indirect tax, one not directly imposed upon persons or property, and is one that is 'imposed on the performance of an act, the engaging in any occupation, or the enjoyment or [sic] a privilege." Id. at 719 (quotations omitted; "[sic]" in original).

With respect to the "[s]hared responsibility payment," again, neither the Fourth Circuit nor the Supreme Court has interpreted its meaning in the context of the priority provision in the Bankruptcy Code.[3]  In this context, "[i]t is the purpose of" the exaction, "not its name, which controls." In re C-T of Virginia, Inc., 977 F.2d 137, 139 (4th Cir. 1992). Nevertheless, while "[t]he name given to the exaction by the [federal Congress] is not conclusive," "it may well be indicative of purpose." Id. (quotations omitted). Indeed, "[t]he best evidence of that purpose is the statutory text adopted by both Houses of Congress and submitted to the President." W. Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 98 (1991).

Here, the plain language of the Affordable Care Act gives a strong indication that its purpose is to establish a penalty, and not a "tax on or measured by income" or an "excise tax on . . . a transaction." Id. § 507(a)(8)(A), (E). It imposes first a "[r]equirement to maintain minimum essential coverage" of health insurance in one of the forms enumerated in the statute. 26 U.S.C. § 5000A(a), (f). Second, for "fail[ures] to meet the requirement," it states "there is hereby imposed on the taxpayer a penalty with respect to such failures." Id. § 5000A(b)(1). It then provides rules

---

[3] The court recognizes, however, that there is a split of authority and approaches among the lower courts on the issue presented by this appeal. Compare e.g., Matter of Chesteen, 799 F. App'x 236, 240 (5th Cir. 2020) (holding that the shared responsibility payment is not an excise tax on a transaction, and not entitled to priority, but not reaching issue of whether it is a tax on or measured by income); and In re Juntoff, No. 19-17032, 2021 WL 1522206, at *1 (Bankr. N.D. Ohio Apr. 15, 2021) (holding that the shared responsibility payment is neither a tax on or measured by income nor an excise tax on a transaction, and not entitled to priority); with In re Robert Szczyporski, __ F.Supp.3d__, Civil No. 2:20-cv-03133, 2021 WL 1207413, at *6 (E.D. Pa. March 31, 2021) (holding that the shared responsibility payment is an income tax entitled to priority); and Matter of Cousins, 601 B.R. 609, 621 (Bankr. E.D. La. 2019) (holding that the shared responsibility payment is "either an excise or an income tax" entitled to priority).

for determining "[t]he amount of the penalty imposed by this section on any taxpayer for any taxable year with respect to failures described in subsection (b)(1)." Id. § 5000A(c)(1).

At the same time, the priority provision gives no indication by its text that it covers such a penalty imposed for failure to comply with a requirement to maintain minimum health insurance coverage. In one subsection to the priority provision, it gives priority to "a penalty related to a claim of a kind specified in this paragraph and in compensation for actual pecuniary loss." 11 U.S.C. § 507(a)(8)(G). That reference to a penalty, is a narrow one limited to penalties in compensation for actual pecuniary loss, which is inapposite here. Nevertheless, its express presence in the priority provision demonstrates that the priority provision allows for a distinction, itself, between taxes and penalties. If Congress had intended to encompass in the priority provision penalties of the type established by the Affordable Care Act it could have stated in broader terms § 507(a)(8)(G) applicable to penalties. See W. Virginia Univ. Hosps., Inc., 499 U.S. at 98.

The court recognizes that, upon inquiry into the function of the shared responsibility payment, it may be considered to function like a tax instead of a penalty generally for constitutional purposes. See National Federation of Independent Business v. Sebelius, 567 U.S. 519, 566 (2012) ("NFIB"). The court addresses further below that functional analysis of the payment generally. For purposes of the instant inquiry, however, the court must determine, under a deferential standard of review favoring a narrow construction, whether the shared responsibility payment specifically is a "tax on or measured by income," or an "excise tax on . . . a transaction." 11 U.S.C. § 507(a)(8)(A) or (E). The plain language of the Affordable Care Act and the priority provision evinces no clear purpose to treat the shared responsibility payment as either.

Moreover, even if presumed to be a tax contrary to the text of the Affordable Care Act and the priority provision, the shared responsibility payment is neither "on or measured by income"

6

nor "on . . . a transaction."  At the outset, it is not a tax "on" income, id. § 507(a)(8)(A), because it is triggered only when a taxpayer "fails to meet the requirement" to maintain minimum essential coverage.  26 U.S.C. § 5000A(b)(1).  Next, whether it is a tax "measured by" income is dependent upon whether that phrase is interpreted broadly or narrowly.  At the broadest level, it could be a tax measured by income because a debtor's income is a factor in its calculation.  See, e.g., id. § 5000A(c)(2)(B).  Interpreted more narrowly, however, it is not a tax measured by income because income alone does not determine its amount in all instances.  For example, in some instances, the shared responsibility payment may be calculated as a "[f]lat dollar amount."  Id. § 5000A(c)(2)(A).  In addition, although income information may determine whether an individual meets an exemption from the payment, exemptions may be based upon other factors as well, such as status as "[m]embers of Indian tribes," or "Hardships."  Id. § 5000A(e).  Given a choice between a narrow reading of the statute and a broad one, the court must follow the narrow one in this context.

Appellant raises two textual counterpoints in favor of a broader interpretation of the "measured by income" provision. First, appellant argues that "[w]hile the shared responsibility payment is not always measured as a percentage of income, it cannot be calculated without knowing the taxable income of the individual in question."  (Appellant's Br. at 37 (emphasis in original; citing 26 U.S.C. § 5000A(e)(2)).[4]  Requiring reference to taxable income to determine whether the requirement applies, however, is not the same as "measur[ing]" the shared responsibility payment "by income."  11 U.S.C.  § 507(a)(8)(A).

Second, appellant  asserts that "[w]hile it is true that other information – i.e. information about insurance coverage – is necessary to calculate the shared responsibility payment, this is

---

[4]  Page numbers in citations to appellant's briefs refer to the page number showing on the face of the brief (e.g., here, page 37), and not the page number designated in the court's case management/electronic case filing (CM/ECF) system (e.g., here, page 44 of 56).

7

similarly true of the federal income tax, which requires copious amounts of non-income information for any taxpayer to calculate." (Appellant's Br. at 37). For example, appellant cites deductions for interest paid on home mortgages, or deductions for medical, dental, or other expenses. (Id.). The comparison is inapt, however, because deductions to income begin with a tax that is undisputedly and expressly a tax "on" income. E.g., 26 U.S.C. § 1(a) ("There is hereby imposed on the taxable income . . . a tax."); § 25(a)(1) (providing a "credit against the tax imposed by this chapter" for home mortgage interest).

Next, the shared responsibility payment is not a tax based on a "transaction," id. § 507(a)(8)(E), because it is based on a "failure[]" to act, rather than an act by a debtor. 26 U.S.C. § 5000A(b)(1). While appellant suggests that the term "transaction" should be "defined broadly," (Appellant's Br. at 23), the term is not so broad as to apply to an inaction on the part of a debtor, and none of the cases it cites apply the term to a debtor's inactivity. See, e.g., In re DeRoche, 287 F.3d 751, 757 (9th Cir. 2002) (treating tax on "the act of employing a worker without carrying the required [workers' compensation] insurance when the worker [was] injured" as an excise tax); Williams v. Motley, 925 F.2d 741, 743–45 (4th Cir. 1991) (treating assessment resulting from a motorist's registration of one vehicle and "operation of another vehicle" without insurance as an excise tax); In re Groetken, 843 F.2d 1007, 1014 (7th Cir. 1988) (considering whether a provision was better "viewed as a sales tax or a tax on the occupation of retailing").[5]

---

[5] Appellant also relies on the Supreme Court's observation that "the Constitution does not guarantee that individuals may avoid taxation through inactivity." (Reply at 7 (quoting National Federation of Independent Business v. Sebelius, 567 U.S. 519, 563 (2012) ("NFIB")) (emphasis added)). However, this remark bearing on the taxing authority of Congress has no bearing on whether the shared responsibility payment is based on a "transaction" under the meaning of § 507(a)(7)(E). The court further addresses application of NFIB below.

In sum, while the shared responsibility payment conceivably could interpreted as a tax measured by income or a tax on a transaction, these interpretations are doubtful and not compelled by the clear language of the statutes.

Appellant raises multiple additional arguments in support of an treating a shared responsibility payment as a priority, which are unavailing.

Appellant argues that it need only establish that the shared responsibility payment is a "tax" and not a penalty, without having to show it meets the specific requirements of any particular type of tax. (Appellant's Br. at 20-21). This argument, however, is contrary to the principles for application of the priority provisions in the Bankruptcy Code. It is appellant's burden to show clearly, precisely, and without a doubt that one of the categories for priority applies. See Howard Delivery Serv., 547 U.S. at 667; New Neighborhoods, 886 F.2d at 719; Ford Motor Credit Co., 35 F.3d at 865. The text of the priority provision provides no indication that it applies to all taxes or everything that functions as a tax. Rather, it provides priority to specifically enumerated taxes. See 11 U.S.C. § 507(a)(8); see United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 220 (1996) ("CF&I") (stating § 507(a)(7) gives "seventh priority to several different kinds of taxes"); New Neighborhoods, 886 F.2d at 719 (stating the "priority section at issue under the Bankruptcy Code extends priority to various types of taxes").

Appellant cites to In re Groetken, 843 F.2d 1007, 1014 (7th Cir. 1988), for the proposition that "Congress sought to include all Federal taxes in section 507." (Appellant's Br. at 36). This argument misses the mark for several reasons. First, Groetken stated instead only that Congress intended that "all Federal, State or local taxes generally considered or expressly treated as excises are covered by this category, including sales taxes, estate and gift taxes, gasoline and special fuel taxes, and wagering and truck taxes," not that Congress sought to include all Federal taxes in

9

section 507 as a whole. Id. (second emphasis added). Second, Groetken relied upon legislative history for its analysis, whereas the plain text of § 507 suffices. See W. Virginia Univ. Hosps., Inc., 499 U.S. at 98. In any event, the quoted statement suggests that all excise taxes properly should include a transaction component, not that a transaction component is irrelevant. 843 F.2d at 1014.

Appellant suggests that the enumeration of taxes in the priority provision merely serves the purpose of differentiating timing rules for different types of taxes. For example, priority is given to "an excise tax on . . . a transaction occurring during the three years immediately preceding the date of filing of the petition," when a return is not required. 11 U.S.C. § 507(a)(8)(E). But, if it was Congress's intent to include all taxes as a priority, it could have simply provided priority for any "tax," and then provided specific timing rules. The text of the Bankruptcy Code demonstrates a congressional purpose to specifically delineate each type of tax subject to priority, rather than to provide a catch all for all types of taxes. Further, if there is any doubt, or choice between a broad construction and a narrow construction, the court must, as here, adopt the narrow construction.

Next, and relatedly, appellant contends that the Supreme Court already determined in NFIB that the shared responsibility payment is a tax, and that this determination is controlling for the instant case. This argument fails on two levels. As an initial matter, determining that the shared responsibility payment is a tax, generally, does not answer the question whether the shared responsibility payment is one of the specific taxes enumerated in § 507 of the Bankruptcy Code.

In any event, the Supreme Court's determination in NFIB was made in a constitutional context, under a much different standard. In particular, the court examined whether "Congress had constitutional authority to enact the individual mandate" in the Affordable Care Act, within "Congress's enumerated power to 'lay and collect Taxes.'" NFIB, 567 U.S. at 546-547, 561. The

10

court observed "[t]he Government asks us to read the mandate not as ordering individuals to buy insurance, but rather as imposing a tax on those who do not buy that product." Id. at 562. Critically, "[t]he question is not whether that is the most natural interpretation of the mandate, but only whether it is a fairly possible one." Id. (emphasis added; quotations omitted). Under this deferential standard, the court saw "no insurmountable obstacle" to interpreting the individual mandate as "an exercise of the taxing power" of Congress. Id. at 569. The court held that it "need not be read to do more than impose a tax," and that this was "sufficient to sustain it." Id.

By contrast, the court recognized that, for purposes of application of the shared responsibility payment to another federal statute, in that case the Anti-Injunction Act, a different more narrow interpretation applies. The court noted that the "Anti–Injunction Act applies to suits 'for the purpose of restraining the assessment or collection of any tax.'" Id. at 543 (quoting § 7421(a); emphasis in original)). The court observed that "Congress cannot change whether an exaction is a tax or a penalty for constitutional purposes simply by describing it as one or the other." NFIB, 567 U.S. at 544 (emphasis in original). But, the manner in which the Anti-Injunction Act and the Affordable Care Act "relate to each other is up to Congress, and the best evidence of Congress's intent is the statutory text." Id. "Congress's decision to label [the shared responsibility] exaction a 'penalty' rather than a 'tax' is significant because the Affordable Care Act describes many other exactions it creates as 'taxes.'" Id. at 544 (emphasis added). Finally, it noted that "[t]he Affordable Care Act does not require that the penalty for failing to comply with the individual mandate be treated as a tax for purposes of the Anti–Injunction Act," and thus it did not need to be so interpreted. Id. at 546. In sum NFIB's constitutional holding is not controlling for purposes of the instant analysis, and it suggests that a narrow interpretation of the shared responsibility payment is reasonable.

Appellant argues that where the Supreme Court interprets a statute in a particular way for constitutional purposes, that reading must apply in other contexts, citing Clark v. Martinez, 543 U.S. 371 (2005). This argument is unavailing for several reasons. First, NFIB proves otherwise, because it interpreted shared responsibility payment broadly for constitutional purposes, and in the same opinion interpreted it narrowly for the purposes of application to another federal statute. NFIB, 567 U.S. at 546, 569. Second, Clark is inapposite because it considered interpretation of two parts of only a single immigration statutory provision, see 543 U.S. at 378, not the interplay between two statutes, as was the case with the Anti-Injunction Act in NFIB, and the Bankruptcy Code here. Third, NFIB applied a broader interpretation of the Affordable Care Act than was required by its plain language, in order to find it constitutional, whereas the court in Clark imposed a narrower interpretation than was required by its plain language. See NFIB, 567 U.S. at 546, 569; Clark, 543 U.S. at 378. NFIB thus permitted, but did not require, a broader reading of the statute, whereas Clark required a narrower reading.

Appellant suggests that the Anti-Injunction Act provides "a specialized meaning" for the term "tax" that enabled the court in NFIB to look only to the label Congress placed on the exaction in the Affordable Care Act. (Appellant's Br. at 15). The court in NFIB, however, did not reference any "specialized meaning" of the term "tax" in the Anti-Injunction Act. To the contrary, it noted that the "Anti-Injunction Act applies to suits 'for the purpose of restraining the assessment or collection of any tax." Id. at 543 (quoting § 7421(a); emphasis in original)). The court cited to one case where it had applied the Anti-Injunction Act "to statutorily described 'taxes' even where that label was inaccurate." Id. at 544 (citing Bailey v. George, 259 U.S. 16 (1922)). There are other instances, however, where courts have applied the Anti-Injunction Act by looking beyond the label and considering the function of the exaction. See, e.g., Mobile Republican Assembly v.

United States, 353 F.3d 1357, 1362 (11th Cir. 2003) (holding "penalties imposed for violating the conditions of that tax status should be considered as part of the tax for purposes of analysis under the Anti–Injunction Act"). That the court in NFIB did not do so for the shared responsibility payment demonstrates the significance of the plain language of the Affordable Care Act. See 567 U.S. at 544 ("[T]he best evidence of Congress's intent is the statutory text.").

Appellant also suggests that the court must apply the same "functional analysis" as the Supreme Court applied for the constitutional analysis in NFIB because the court there cited to cases interpreting the Bankruptcy Code as examples of such a functional analysis. (Appellant's Br. at 8). This argument misses the mark for several reasons. First, as noted previously, the Supreme Court employed a "functional approach" only to determine that the shared responsibility payment "may for constitutional purposes be considered a tax." NFIB, 567 U.S. at 566. Second, it used this approach to distinguish a tax from a penalty. Id. It was not considering whether the shared responsibility payment fit the specific parameters of the priority categories at issue in this case. Id. See id. Third, while the bankruptcy cases cited in NFIB suggest that the shared responsibility payment may be treated generally as a tax and not a penalty, they do not dictate a particular result when applied to the narrow issue presented in this case.

For example, in United States v. Reorganized CF & I Fabricators of Utah, Inc., 518 U.S. 213, 226 (1996) ("CF&I"), the court held that an exaction labeled a "tax" under 26 U.S.C. § 4971(a), related to pension plans, was not entitled to seventh priority as an "excise tax" under § 507(a)(7)(E), but instead was, for bankruptcy purposes, a "penalty to be dealt with as an ordinary, unsecured claim." In United States v. Sotelo, 436 U.S. 268 (1978), the court held that funds due "for internal revenue taxes that had been collected from the corporation's employees but not paid over to the government," under 26 U.S.C. § 6672, were functionally taxes rather than a penalty.

Id. at 270. The court reasoned, "[t]hat the funds due are referred to as a 'penalty' when the Government later seeks to recover them does not alter their essential character as taxes for purposes of the Bankruptcy Act, at least in a case in which, as here, the § 6672 liability is predicated on a failure to pay over, rather than a failure initially to collect, the taxes." Id. at 275. These cases allow, but do not require, a court to disregard the plain language of a statute in examining the purpose of an exaction. See In re C-T of Virginia, Inc., 977 F.2d at 139 (noting while "[t]he name given to the exaction by the [federal Congress] is not conclusive," "it may well be indicative of purpose").

Appellant also contends that the functional approach as applied by the Fourth Circuit in Williams v. Motley, 925 F.2d 741 (4th Cir. 1991) should be controlling. There, the court analyzed whether a state law "uninsured motor vehicle assessment" was an "excise tax[]" for purposes of 11 U.S.C. § 507(a)(7)(E). Id. at 742. Williams is instructively distinguishable in several key respects. First, it did not involve a federal statute, as here, which expressly imposes a "penalty" for failure to meet a requirement established by the statute. Rather, it involved a state statute that imposed an "assessment." 925 F.2d at 742.[6] Thus, from the outset, the plain language of the statute is materially different. Second, and relatedly, the court considered the distinction between a "fee" rather than a "tax," id. at 743, in contrast to the distinction between a "penalty" and a "tax" at issue in the instant case. Third, the court did not address the requirement of a "transaction" in § 507(a)(7)(E), whereas this is a critical feature missing from the shared responsibility payment in the Affordable Care Act. In Williams, by contrast, the uninsured motor vehicle assessment was issued "as a result of [the debtor's] operation of [a] vehicle registered to her" without insurance.

---

[6] The court does not quote the state statute at issue in Williams. However, it later refers to the exaction as a "fee," and this is the term used to describe the exaction in the current version of the state statute. See Va. Code. § 46.2-706(a).

Id. at 742.  For all these reasons, the holding in Williams is inapposite, and illustrative of the key facts in this case that require the opposite result.

At bottom, there is no clear basis in the text of the applicable statutes or the case law for interpreting the shared responsibility payment as a "tax on or measured by income," or an "excise tax on . . . a transaction," entitled to priority under 11 U.S.C. § 507(a)(8)(A) or (E).  Therefore, the bankruptcy court correctly allowed appellees' objection to appellant's claim.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's order is AFFIRMED.  The clerk is DIRECTED to close this case.

SO ORDERED, this the 26th day of August, 2021.

_____
LOUISE W. FLANAGAN
United States District Judge