**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-2220

UNITED STATES OF AMERICA,

Creditor - Appellant,

v.

FABIO ALICEA; SARAH J. ZABEK,

Debtors - Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  Louise W. Flanagan, District Judge.  (7:20-cv-00169-FL)

Argued:  October 28, 2022                    Decided:  January 19, 2023
                    Amended:  January 19, 2023

Before WILKINSON and NIEMEYER, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Reversed and remanded by published opinion. Senior Judge Traxler wrote the opinion in which Judge Wilkinson joined. Judge Wilkinson wrote a separate concurring opinion, and Judge Niemeyer wrote a dissenting opinion.

**ARGUED:**  Pooja Ashok Boisture, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant.  William Earl Brewer, Jr., Raleigh, North Carolina, for Appellees.  **ON BRIEF:**  David A. Hubbert, Deputy Assistant Attorney General, Ellen Page DelSole, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C.; Michael F. Easley, Jr., United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant.  Travis Sasser, SASSER LAW FIRM, Cary, North Carolina, for Appellees.

TRAXLER, Senior Circuit Judge:

When first enacted, the Affordable Care Act ("ACA") included a mandate (now repealed) requiring most individuals to maintain health insurance meeting certain minimum requirements. Individuals covered by the ACA who did not maintain the minimum level of insurance were required to pay a "shared responsibility payment" ("SRP") to the Internal Revenue Service through their annual income tax returns. *See* 26 U.S.C. § 5000A. The ACA identifies the SRP as a penalty rather than a tax. *See* 26 U.S.C. § 5000A(b)(1) ("If a taxpayer [required to maintain insurance] fails to meet the requirement . . . for 1 or more months, then, except as provided in subsection (e), there is hereby imposed on the taxpayer a penalty with respect to such failures in the amount determined under subsection (c).").

In *National Federation of Independent Business v. Sebelius*, 567 U.S. 519 (2012) (*NFIB*), the Supreme Court upheld the constitutionality of the individual mandate. Although the Court determined that the SRP was a penalty, not a tax, for purposes of the Anti-Injunction Act, *see id.* at 546, it concluded that, as a constitutional matter, the SRP could fairly be read as a tax on the uninsured, which the Court found was within Congress's power to impose, *see id.* at 574. The question in this case is whether the SRP qualifies as a tax measured by income or as an excise tax entitled to priority in bankruptcy proceedings. *See* 11 U.S.C. §§ 507(a)(8)(A), 507(a)(8)(E). As we will explain, we conclude that the SRP qualifies as a tax measured by income, and we therefore reverse the judgment of the district court and remand for further proceedings.

I.

2

In 2018, when the ACA's mandate and SRP were still in effect, Fabio Alicea and his wife Sarah Zabek ("Taxpayers") did not maintain the minimum insurance coverage required by the ACA. The taxpayers did not include their $2409 SRP when they filed their 2018 federal tax return. In December 2019, the Taxpayers filed for Chapter 13 bankruptcy protection in the Eastern District of North Carolina.

The IRS filed a proof of claim for the unpaid SRP and asserted that its claim was entitled to priority as an income or excise tax under § 507 of the Bankruptcy Code. The Taxpayers objected to the government's claim of priority. The bankruptcy court granted the objection, concluding that, for purposes of the Bankruptcy Code, the SRP is a penalty, not a tax, and therefore is not entitled to priority under § 507(a)(8). The government appealed to the district court, which affirmed the bankruptcy court's decision. The district court held that even if the SRP was generally a tax, it did not qualify as a tax measured by income or an excise tax and thus was not entitled to priority. The government thereafter appealed to this court. Whether the SRP is entitled to priority under 11 U.S.C. § 507(a)(8) as either a tax measured by income or an excise tax on a transaction is a purely legal question that we review *de novo*. *See Ford Motor Credit Co. v. Dobbins*, 35 F.3d 860, 865 (4th Cir. 1994).

## II.

The Bankruptcy Code gives priority to certain classes of unsecured claims, which must be paid in full before other unsecured claims may be paid. Section 507(a)(8)(A) gives priority to unsecured claims for "a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition." Section 507(a)(8)(E)

3

gives priority status to "an excise tax on . . . a transaction" occurring within a designated time period. The Bankruptcy Code does not define "tax" or "excise tax."

Because "[t]he presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among the creditors. . . . , statutory priorities must be narrowly construed." *Ford Motor Credit*, 35 F.3d at 865; *see also New Neighborhoods, Inc. v. W. Virginia Workers' Comp. Fund*, 886 F.2d 714, 719 (4th Cir. 1989) (explaining that "there is a need carefully to limit priority claims in bankruptcy," given that "[e]very priority claim lessens the dividend, if any, of a general creditor in the event of bankruptcy"). When applying § 507(a), courts distinguish between *taxes* and *penalties*. Taxes are entitled to priority if they qualify as taxes measured by income or as excise taxes, but penalties are not entitled to priority and must "be dealt with as an ordinary, unsecured claim*." United States v. Reorganized CF & I Fabricators of Utah, Inc.*, 518 U.S. 213, 226 (1996).

Broadly speaking, "a tax is an enforced contribution to provide for the support of government; a penalty . . . is an exaction imposed by statute as punishment for an unlawful act." *Id*. at 224 (cleaned up); *see also New Neighborhoods*, 886 F.2d at 718 ("[A] payment may be classified as a tax if the state has compelled the payment and if the payment serves a public purpose."). When determining whether a particular exaction qualifies as a tax or as a penalty for purposes of priority in bankruptcy, "the label placed on the exaction" is not controlling. *CF&I Fabricators*, 518 U.S. at 220. Instead, we apply a functional analysis looking to "the operation of the provision using the term in question." *Id.*; *see United States v. Sotelo*, 436 U.S. 268, 275 (1978) ("'That the funds due are referred to as a 'penalty' . . . does not alter their essential character as taxes.").

III.

At issue in this appeal is whether, for purposes of priority treatment in bankruptcy proceedings, the SRP qualifies as a tax or a penalty. If we conclude that the SRP is a tax rather than a penalty, we must then determine whether it qualifies as a tax measured by income or as an excise tax.

The government argues that the Supreme Court's decision in *NFIB* upholding the individual mandate largely resolves these questions, because the Court found the SRP to be a tax by engaging in the same functional analysis required in the bankruptcy context. The Taxpayers, however, argue that the *NFIB* Court's analysis of the tax question is not binding on this court, because the constitutional question of whether the SRP was within Congress's taxing power is governed by different principles than the statutory question of whether the SRP constitutes a tax within the meaning of the Bankruptcy Code. Relying instead on the *NFIB* Court's analysis of the SRP under the Anti-Injunction Act, the Taxpayers contend that because Congress deliberately labeled the SRP as a penalty, Congress did not intend to treat the SRP as a tax.

A.

Given the centrality of the Supreme Court's decision in *NFIB* to the parties' arguments, we begin there.

As is relevant to this case, *NFIB* involved constitutional challenges to the ACA that focused on the individual mandate and the SRP. The challengers contended that the mandate and SRP exceeded Congress' powers under the Commerce Clause because the Act sought to regulate *inaction*—the failure to maintain adequate insurance. Before

5

addressing the merits of the constitutional question, however, the Court first had to determine whether the Anti-Injunction Act, 26 U.S.C. § 7421, barred the challenge.

The Anti-Injunction Act prohibits lawsuits seeking to "restrain[] the assessment or collection of any tax." § 7421(a). Instead, the tax must first be paid, and the taxpayer may then go to court to challenge the tax and seek a refund. The Supreme Court held that the SRP was not a tax for purposes of the Anti-Injunction Act. The Court noted that the ACA labels the SRP a penalty, but labels other exactions taxes. The Court concluded that the different statutory treatment demonstrated that Congress did not intend the SRP to be treated as a tax within the meaning of the Anti-Injunction Act:

> Congress's decision to label this exaction a "penalty" rather than a "tax" is significant because the Affordable Care Act describes many other exactions it creates as "taxes." Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally.
>
> . . . .
>
> The Anti–Injunction Act and the Affordable Care Act . . . are creatures of Congress's own creation. How they relate to each other is up to Congress, and the best evidence of Congress's intent is the statutory text. We have thus applied the Anti–Injunction Act to statutorily described "taxes" even where that label was inaccurate. . . .
>
> Congress can, of course, describe something as a penalty but direct that it nonetheless be treated as a tax for purposes of the Anti–Injunction Act.
>
> . . . .
>
> The Affordable Care Act[, however,] does not require that the penalty for failing to comply with the individual mandate be treated as a tax for purposes of the Anti–Injunction Act.

567 U.S. at 544, 546.

6

On the merits of the constitutional challenges, the Supreme Court concluded that the individual mandate exceeded the scope of Congress's power under the Commerce Clause. The Court explained that "[t]he Constitution grants Congress the power to 'regulate Commerce.' The power to regulate commerce presupposes the existence of commercial activity to be regulated. If the power to 'regulate' something included the power to create it, many of the provisions in the Constitution would be superfluous." *Id.* at 550 (citation omitted).

The Court then considered the government's alternative argument that the mandate may be read "not as ordering individuals to buy insurance, but rather as imposing a tax on those who do not buy that product," *id.* at 562, and thus a proper exercise of the government's powers to lay and collect taxes. Although the Court believed "[t]he most straightforward reading of the mandate is that it commands individuals to purchase insurance," *id.*, the Court recognized that "[t]he text of a statute can sometimes have more than one possible meaning." *Id.*

> The question is not whether [the government's view that the mandate imposes a tax on those without insurance] is the most natural interpretation of the mandate, but only whether it is a fairly possible one. As we have explained, every reasonable construction must be resorted to, in order to save a statute from unconstitutionality. The Government asks us to interpret the mandate as imposing a tax, if it would otherwise violate the Constitution. Granting the Act the full measure of deference owed to federal statutes, it can be so read . . . .

*Id.* at 563 (cleaned up).

When explaining why the mandate can reasonably be read as imposing a tax on the uninsured, the Court engaged in a functional analysis of the SRP. The Court noted that the SRP

> looks like a tax in many respects. The [SRP] is paid into the Treasury by
> taxpayers when they file their tax returns. It does not apply to individuals
> who do not pay federal income taxes because their household income is less
> than the filing threshold in the Internal Revenue Code. For taxpayers who do
> owe the payment, its amount is determined by such familiar factors as taxable
> income, number of dependents, and joint filing status. The requirement to
> pay is found in the Internal Revenue Code and enforced by the IRS, which .
> . . must assess and collect it in the same manner as taxes. This process yields
> the essential feature of any tax: It produces at least some revenue for the
> Government.

*NFIB*, 567 U.S. 563–64 (cleaned up).

While the statutory labelling of the SRP as a penalty was determinative of the Anti-

Injunction Act question, the Court explained that the penalty label

> does not determine whether the payment may be viewed as an exercise of
> Congress's taxing power. It is up to Congress whether to apply the Anti–
> Injunction Act to any particular statute, so it makes sense to be guided by
> Congress's choice of label on that question. That choice does not, however,
> control whether an exaction is within Congress's constitutional power to tax.

*Id.* at 564. In the Court's view, "[t]he Affordable Care Act's requirement that certain

individuals pay a financial penalty for not obtaining health insurance may reasonably be

characterized as a tax. Because the Constitution permits such a tax, it is not our role to

forbid it, or to pass upon its wisdom or fairness." *Id.* at 574.

B.

As noted above, both sides of this case rely on *NFIB* to support their positions. The

government contends that the Court's determination that the SRP was a tax for purposes

of the constitutional inquiry requires us to conclude that the SRP is a tax for bankruptcy

purposes, while the Taxpayers contend that the *NFIB* Court's determination that the SRP

was a penalty for purposes of the Anti-Injunction Act requires us to conclude that the SRP

is a penalty for bankruptcy purposes. The dissent agrees with the Taxpayers and argues

8

that, under *NFIB*, the statutory label given a governmental exaction always controls any question of statutory interpretation. *See Dissenting Op.* at 23 ("[W]hen Congress labels the shared responsibility payment a penalty, not a tax, the payment should be treated as a penalty in other congressional enactments, including the Bankruptcy Code. This holding is required by [*NFIB*].").

1.

We disagree with the Taxpayers and the dissent that *NFIB* requires us to treat the SRP as a penalty. While the *NFIB* Court did rely primarily on the statutory label when deciding that the SRP was not a tax for purposes of the Anti-Injunction Act, the court did not hold that the statutory label always controls all statutory questions. Instead, the court indicated that its analysis only governed questions under the Anti-Injunction Act. *See NFIB*, 567 U.S. at 564 ("It is up to Congress *whether to apply the Anti–Injunction Act to any particular statute*, so it makes sense to be guided by Congress's choice of label on that question.") (emphasis added).

Accepting the Taxpayers' argument would mean that the *NFIB* Court silently upended bankruptcy practice and overruled a long line of cases. As discussed above, when determining whether a governmental exaction is a tax or penalty for bankruptcy purposes, Supreme Court precedent *requires* us to apply a functional analysis that ignores the label given to the exaction and instead considers whether the exaction operates as a tax or a penalty:

> On a number of occasions, this Court considered whether a particular exaction, whether or not called a "tax" in the statute creating it, was a tax for purposes of [priority in bankruptcy proceedings], and *in every one of those*

9

> *cases the Court looked behind the label placed on the exaction and rested its*
> *answer directly on the operation of the provision using the term in question.*

*CF & I Fabricators*, 518 U.S. at 220 (1996); *see City of Huntington*, 999 F.2d at 73 ("The proper analysis to arrive at the real nature of the [exaction] is to examine all the facts and circumstances and assess them on the basis of economic realities.").

If the dissent is right that the *NFIB* Court held that the statutory label given a governmental exaction always controls any question of statutory construction, that would mean that the Court used a non-bankruptcy case to overrule *CF&I* and to reject its long-standing approach to bankruptcy cases. The *NFIB* Court, however, never indicated that its analysis of the Anti-Injunction Act issue was breaking new ground or required the overruling of any cases. If the Court's analysis of the Anti-Injunction Act issue had worked such a fundamental change in unrelated areas of the law, it seems likely that the Court would have been aware of the change and would have acknowledged the consequences of its decision.

Moreover, the *NFIB* Court relied on two bankruptcy functional-approach cases— *CF&I* and *Sotelo*—when concluding that the SRP operates as a tax for constitutional purposes. *See NFIB*, 567 U.S. at 565-67 & n.7. If the Court intended to overrule those cases and hold the statutory label controls all statutory questions, it seems unlikely that the Court would rely, without comment, on cases that it had just silently overruled.

The dissent does not address these difficulties in its approach or even acknowledge the long-established line of cases requiring a functional approach when considering claims of priority under the Bankruptcy Code. *CF&I* and *City of Huntington* are binding precedent that require us to apply a functional approach when determining whether a governmental

10

exaction qualifies as a tax or a penalty for purposes of claim priority under the Bankruptcy Code. Because the Supreme Court in *NFIB* did not purport to overrule any of its Anti-Injunction Act cases, much less any of its bankruptcy cases, "it is not our role to say it did." *United States v. Moses*, 23 F.4th 347, 357 (4th Cir. 2022) ("[I]t is noteworthy that *Kisor* did not purport to overrule *Stinson*, and it is not our role to say it did."), *cert. denied,* No. 22-163 (U.S. Jan. 9, 2023). Unless and until the *Supreme Court* overrules *CF&I*, we are obliged to follow it. *See Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021) (It is "the Supreme Court's prerogative alone to overrule one of its precedents. *It is beyond our power to disregard a Supreme Court decision*, even if we are sure the Supreme Court is soon to overrule it." (cleaned up), *cert. denied,* 211 L. Ed. 2d 403 (Dec. 13, 2021). Under *CF&I* and *City of Huntington*, the "penalty" label assigned to the SRP is not dispositive of the priority question before us, and we must instead look to the nature and function of the SRP to determine whether it qualifies as a tax entitled to priority under 11 U.S.C. § 507(a)(8).

## 2.

We turn now to the government's claim that we are bound by the *NFIB* Court's application of the functional approach to conclude the SRP can be viewed as a tax. The Taxpayers correctly observe that conflicting presumptions are involved in this case and in *NFIB*. In *NFIB*, the determination that the SRP could reasonably be viewed as a tax was a product of long-standing principles of statutory interpretation that required the Supreme Court to find the mandate constitutional if fairly possible. This case, however, presents a question of statutory meaning rather than congressional power. The question is whether the

11

SRP is a tax within the meaning of the Bankruptcy Code, under a statute that we must construe narrowly.

The Third Circuit recently considered the issue before us and concluded that, in light of the differing presumptions involved, *NFIB* was not directly controlling of the bankruptcy priority question. *See In re Szczyporski*, 34 F.4th 179, 186 (3d Cir. 2022) ("These conflicting presumptions suggest that an exaction could function as a tax for the broader purpose of constitutional validity, but not within the narrower confines of bankruptcy priority."). We generally agree with the Third Circuit that, because of the differing presumptions, a hypothetical exaction could be a tax for constitutional purposes and a penalty for purposes of priority in bankruptcy proceedings. The *NFIB* Court, however, stated that the SRP qualified as a tax even under the narrowest view of the taxing power. *See NFIB*, 567 U.S. at 573 ("We have already explained that the shared responsibility payment's practical characteristics pass muster as a tax under our narrowest interpretations of the taxing power."). Accordingly, we are not so sure that the broader presumption at play in *NFIB* makes the decision less applicable to the question before us.

Moreover, as noted above, the Court concluded that the SRP could reasonably be viewed as a tax by relying on cases that applied the functional approach to the question of tax versus penalty in the bankruptcy context. If applying the identical functional analysis that we apply in the bankruptcy context led the Supreme Court to conclude that the SRP functions as a tax, it would seem difficult for an intermediate court to reach a different conclusion.

12

In any event, as we will explain, we agree that a functional analysis of the SRP shows that it operates as a tax, not a penalty. We therefore do not need to decide whether we are technically bound by the Supreme Court's functional analysis of the SRP.

## IV.

We turn now to the meat of the issue on appeal—whether the government's claim for the unpaid SRP is entitled to priority under 11 U.S.C. § 507(a)(8).

## A.

When determining whether a governmental exaction is a tax, "[t]he proper analysis to arrive at the real nature of the [exaction] is to examine all the facts and circumstances and assess them on the basis of economic realities." *United States v. City of Huntington*, 999 F.2d 71, 73 (4th Cir. 1993) (cleaned up). "For the purpose of determining claim priority in the context of bankruptcy," an exaction is a tax if it is

> (a) An involuntary pecuniary burden, regardless of name, laid upon individuals or property; (b) Imposed by, or under authority of the legislature; (c) for public purposes, including the purpose of defraying expenses of government of undertakings authorized by it; and (d) Under the police or taxing power of the state.

*Id.* at 73 n.4. Applying this functional standard, we conclude that the SRP qualifies as a tax.[*]

---

[*] This question has been considered by several courts. The Third Circuit has concluded that the SRP qualifies as a tax measured by income. *See In re Szczyporski*, 34 F.4th 179, 190 (3d Cir. 2022) ("[W]e hold that the shared responsibility payment is a tax 'measured by income.' As such, it is entitled to priority under Section 507(a)(8)(A).") (cleaned up). The Fifth Circuit in a non-precedential opinion has concluded that the SRP does not qualify as an excise tax, but the court declined to consider the untimely raised question of whether it qualified as a tax measured by income. *See In re Chesteen*, 799 F. App'x 236, 239-40 (5th Cir. 2020) ("In this appeal, the Government . . . contends the owed

(Continued)

13

The SRP is imposed by the government under its taxing power on a large, identifiable class of people (uninsured, nonexempt taxpayers), and the SRP is collected by the IRS as part of the regular income tax filing process. The SRP serves public purposes, as it raises some amount of revenue for the government and encourages individuals to maintain health insurance, which in turn reduces the expenses of providing medical care to the uninsured borne by governments and medical providers. *See In re Szczyporski*, 34 F.4th at 186 ("The Supreme Court's *[NFIB]* analysis is not dispositive in the bankruptcy context, but we find it persuasive. Based on the functional examination of the shared responsibility payment's actual effects and operation, we conclude that the payment is a tax for bankruptcy purposes.").

The Taxpayers contend that the SRP cannot be viewed as a tax because the primary purpose of the individual mandate and the SRP was to encourage the purchase of health insurance, not to raise revenue. We disagree. As the Supreme Court has explained, the "essential feature of any tax" is that "[i]t produces at least some revenue for the Government." *NFIB*, 567 U.S. at 564.

> Although the [SRP] will raise considerable revenue, it is plainly designed to expand health insurance coverage. But taxes that seek to influence conduct are nothing new. . . . That § 5000A seeks to shape decisions about whether to buy health insurance does not mean that it cannot be a valid exercise of the taxing power.

---

SRP satisfies one of two subsections: 11 U.S.C. § 507(a)(8)(E)(i), 'an excise tax on a transaction'; and 11 U.S.C. § 507(a)(8)(A), 'a tax on or measured by income.' As explained *infra*, the former fails, and the latter is not properly before our court.") (cleaned up). District courts and bankruptcy courts have reached conflicting conclusions. *See In re Szczyporski*, 34 F.4th at 184-85 nn.1-3 (collecting cases).

14

*Id.* at 567. Accordingly, we conclude that the SRP operates as a tax, not a penalty.

B.

Although we conclude that the SRP is properly viewed as a tax, the government's claim is entitled to priority only if the SRP further qualifies as either "a tax on or measured by income or gross receipts," 11 U.S.C. § 507(a)(8)(A), or an "excise tax on . . . a transaction," § 507(a)(8)(E). Because we conclude that the SRP qualifies as a tax measured by income, it is unnecessary for us to consider whether the SRP also amounts to an excise tax.

The statute setting out the method for calculating the SRP, 26 U.S.C. § 5000A(c), contains formulas keyed to individual and household income. The amount of the SRP is calculated "as a percentage of household income, subject to a floor based on a specified dollar amount and a ceiling based on the average annual premium the individual would have to pay for qualifying private health insurance." *NFIB*, 567 U.S. at 539. Because household income provides the starting point for all SRP calculations, we have no difficulty concluding that the SRP is "measured by income."

According to the Taxpayers, however, the SRP is not a tax measured by income because "[t]he threshold question of whether the [SRP] is triggered is not answered by reference to how much income an individual earned, but by reference to whether an individual had health insurance." Brief of Respondent at 12. The Supreme Court appears to have already rejected this argument, as the Court in *NFIB* explained that the SRP obligation "is triggered by specific circumstances—earning a certain amount of income but not obtaining health insurance." 567 U.S. at 571.

15

USCA4 Appeal: 21-2220    Doc: 35    Filed: 01/19/2023    Pg: 16 of 25

Moreover, the bankruptcy statute gives priority to claims for taxes *measured* by income, not to claims for taxes *triggered by* a particular income level. Even if income has nothing to do with triggering *liability* for the SRP, the *amount owed* for the SRP is measured by income. *See In re Szczyporski*, 34 F.4th at 188 (The SRP "is not a traditional tax 'on' income earned or received. Section 507(a)(8)(A)'s plain language, however, grants priority not only to traditional income taxes, but also to taxes, like the shared responsibility payment, whose amounts are calculated based on the taxpayer's income.").

The Taxpayers also suggest that the SRP is not measured by income because some groups—like members of Indian tribes and those who cannot afford the SRP—are not required to pay it at all, and others pay only a flat rate. Again, we disagree.

As the government points out, the flat rate applies only if it is greater than the amount calculated based on the taxpayer's income. *See* 26 U.S.C. § 5000A(c)(2). Because the flat rate cannot be calculated without first calculating the amount due based on income, the existence of the flat rate does not mean that the SRP is not measured by income. *See In re Szczyporski*, 34 F.4th at 189 ("Because the amount due under each of these scenarios is based on the taxpayer's household income, the shared responsibility payment is an obligation 'measured by income,' even when the payment is a flat fee rather than a percentage of income."). And while certain groups are entirely exempt from the SRP, that again does not mean that the SRP is not measured by income. There are many exemptions from the obligation to pay federal income taxes, yet there is no dispute that federal income taxes are entitled to priority as taxes measured by income. That some taxpayers are not required to pay the SRP does not change the fact that when the SRP must be paid, the

16

amount to be paid is measured by the taxpayer's income. *See In re Juntoff*, 636 B.R. 868, 885 (B.A.P. 6th Cir. 2022) ("[W]hile a taxpayer may be obligated to pay a flat amount rather than a percentage of their income, making that determination requires a taxpayer to input their income into a calculation. Stated differently, it is impossible to discern a nonexempt taxpayer's liability for the SRP without factoring their income into the analysis, making the SRP a tax 'measured by' the taxpayer's income.").

## V.

To summarize, we conclude that the SRP qualifies as a tax under the functional approach that has consistently been applied in bankruptcy cases and that nothing in the Supreme Court's decision in *NFIB* requires us to abandon that functional approach. Because the SRP is a tax that is measured by income, the government's claim is entitled to priority under 11 U.S.C. § 507(a)(8)(A). Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

WILKINSON, Circuit Judge, concurring:

I concur in full in Judge Traxler's fine majority opinion in this case. Plaintiff's suit strikes me as a not-too-subtle rearguard action against the Affordable Care Act and the decision to uphold it, *NFIB v. Sebelius*, 567 U.S. 519 (2012). That decision is the law, however, and circumventing it would be as impermissible as overruling it.

The SRP has now been effectively slain, *see* Tax Cuts and Jobs Act of 2017, Pub. L. No. 115–97, § 11081, 131 Stat. 2092 (reducing payments to zero), and I should have thought the matter, so very controversial at the time, had been well settled. The smoke of battle lingers still, however, in our fine bankruptcy courts of all places. During its brief lifetime, the SRP behaved and functioned as one would expect a tax to do. Not just in one particular but in many. *See NFIB*, 567 U.S. at 563–64; Maj. Op. at 11–13. This functionality trumps labeling, as the Supreme Court and this court have repeatedly held.

It is time now to give the SRP a decent burial, with all the accoutrements of priority the Bankruptcy Code affords.

This fight is over. R.I.P.

NIEMEYER, Circuit Judge, dissenting:

The issue in this case is straightforward — whether the "shared responsibility payment" imposed by the Patient Protection and Affordable Care Act of 2010 ("Affordable Care Act" or "ACA") is a "tax" or a "penalty" when considered in the context of the Bankruptcy Code, which gives the IRS priority for tax claims but not for penalty claims. *See* 11 U.S.C. § 507(a)(8); *see also United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213, 226 (1996). Like the majority, I conclude that the answer to this question is provided by the Supreme Court's decision in *National Federation of Independent Business v. Sebelius* (*NFIB*), 567 U.S. 519 (2012), which specifically addressed the nature of the payment. But I differ with the majority in that I conclude that *NFIB* requires that the payment be treated as a penalty in the context of the Bankruptcy Code. By concluding instead that the payment is a tax in that context, the majority fails to recognize that *NFIB* applied two distinct analyses, one when construing the ACA's statutory text and another when determining the scope of Congress's constitutional authority for enacting the ACA. While the *NFIB* Court chose to apply a functional standard when determining the scope of Congress's constitutional authority, it applied the standard rules of statutory construction when determining, for purposes of how the ACA interacted with another statute, whether the shared responsibility payment was a tax or a penalty, concluding that the payment was a penalty.

Specifically, the *NFIB* Court held that for purposes of the Anti-Injunction Act — which prohibits actions to restrain the assessment or collection "of any tax" — the ACA's shared responsibility payment is a "penalty," as so labeled, and not a "tax." 567 U.S. at

543.  The Court explained, "Congress's decision to label this exaction a 'penalty' rather than a 'tax' is significant because the Affordable Care Act describes many other exactions it creates as 'taxes.'  Where Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally." *Id.* at 544 (citation omitted).  But the Court noted that while Congress chose to label the shared responsibility payment a penalty, its label does not control when the Court must determine *the scope of Congress's authority under the Constitution* — more particularly, when it must determine the scope of Congress's taxing power.  *See* U.S. Const. art. I, § 8, cl. 1 ("The Congress shall have Power To lay and collect Taxes").  The Court said that the "*constitutional question* was not controlled by Congress's choice of label," *NFIB*, 567 U.S. at 564 (emphasis added), and thus the shared responsibility payment "may *for constitutional purposes* be considered a tax, not a penalty," *id.* at 566 (emphasis added).  The distinction the Court drew between following Congress's labels when construing its legislation and looking behind them when determining the scope of Congress's power under the Constitution is central to the disposition of this case.

The majority fails to accept the Supreme Court's distinct analyses, applying the functional analysis that the Court employed only for constitutional interpretation to its statutory interpretation of the ACA.  And even then, the majority is noncommittal as to whether it is "technically bound by the Supreme Court's functional analysis of the [shared responsibility payment]." *Ante* at 13.  Moreover, to avoid the Court's statutory analysis, which *rejected* a functional analysis in construing the term "penalty," *see NFIB*, 567 U.S. at 544 (rejecting the argument that the shared responsibility payment, although labeled a

penalty, "functions like a tax"), the majority states simply that "the [*NFIB*] [C]ourt did not

hold that the statutory label always controls all statutory questions."  *Ante* at 9.  In short,

the majority simply refuses to apply the analysis specified by the Court that

> Congress's decision to label this exaction a "penalty" rather than a "tax" is
> significant because the Affordable Care Act describes many other exactions
> it creates as "taxes."  Where Congress uses certain language in one part of a
> statute and different language in another, it is generally presumed that
> Congress acts intentionally.

*NFIB*, 567 U.S. at 544 (citation omitted).  And the majority does so to be able to hold that

the "penalty" is not actually a penalty but a "tax," even though it was not considered a tax

by Congress.  That reasoning is unsustainable.

## I

The Affordable Care Act mandates that "applicable individual[s]" maintain

"minimum essential [health insurance] coverage," 26 U.S.C. § 5000A(a), and, for persons

who fail to do so, it imposes a "penalty," *id.* § 5000A(b)(1).  The Act also provides that the

"penalty" must be paid to the IRS with the taxpayer's tax return and "shall be assessed and

collected in the same manner *as an assessable penalty* under [26 U.S.C. §§ 6671–6725]."

*Id.* § 5000A(g)(1) (emphasis added).  In short, the ACA labels the shared responsibility

payment a "penalty" that is imposed for failure to maintain mandated health insurance,

which stands in contrast to the Act's labeling of other exactions as "taxes."  *See NFIB*, 567

U.S. at 544.

The taxpayers before us filed a voluntary Chapter 13 bankruptcy petition in

December 2019, and the IRS filed a proof of claim of roughly $30,000 as an unsecured

*priority* claim, which included $2,409 owed for an unpaid shared responsibility payment

under the ACA.  The taxpayers objected to the claim, contending that the portion consisting

of the shared responsibility payment was not entitled to priority because it was not a tax,

but a penalty, and therefore should be classified as an "unsecured *general* claim," not an

"unsecured *priority* claim."

The Bankruptcy Code distinguishes between how claims for unpaid taxes and

claims for unpaid penalties are to be treated.  Under § 507(a)(8), it gives the IRS priority

for certain unpaid *taxes*.  *See* 11 U.S.C. § 507(a)(8); *see also Neighborhoods, Inc. v. W. Va.

Workers' Comp. Fund*, 886 F.2d 714, 719 (4th Cir. 1989) (noting that § 507(a) "extends

priority to various types of taxes").  But if the debt is an unpaid *penalty*, the claim is not

given priority.

The bankruptcy court sustained the taxpayers' objection and concluded that the

shared responsibility payment was a penalty and not a tax, relying on *NFIB*.  The district

court affirmed, explaining in particular how its holding was governed by *NFIB*:

> The [*NFIB*] court observed that "Congress cannot change whether an
> exaction is a tax or a penalty for *constitutional* purposes simply by describing
> it as one or the other."  But, the manner in which the Anti-Injunction Act and
> the Affordable Care Act "relate to each other is up to Congress, and the best
> evidence of Congress's intent is the statutory text."

(Quoting *NFIB*, 567 U.S. at 544).  I would affirm.

## II

The issue in this case is one of *statutory* interpretation — whether the shared

responsibility payment is a penalty as so labeled by Congress in the ACA.  Given the plain

meaning of the text, I conclude that Congress's labeling it a penalty is controlling for

purposes of other congressional enactments, and therefore it should be treated as a penalty

in the Bankruptcy Code, which distinguishes penalties from taxes.  As the Supreme Court

instructs, Congress's labels must be honored when engaging in statutory interpretation,

"even where [the] label was inaccurate."  *NFIB*, 567 U.S. at 544.  And in responding to the

argument that the ACA treats the shared responsibility payment as a tax, despite being

labeled a penalty, for purposes of applying the Anti-Injunction Act, 26 U.S.C. § 7421(a),

the Court stated that "[t]he text of the pertinent statutes suggests otherwise."  *NFIB*, 567

U.S. at 543.  It explained that Congress "chose to describe the '[s]hared responsibility

payment' imposed on those who forgo health insurance not as a 'tax,' but as a 'penalty,'"

and that because the pertinent statutes are "creatures of Congress's own creation[,] [h]ow

they relate to each other is up to Congress," even if Congress's labels are thought to be

inaccurate.  *Id.* at 543–44.  Indeed, the Court specifically rejected the argument that, for its

statutory construction, it should apply a functional analysis.  *Id*. at 544.

Similarly here, the pertinent statutes are the ACA and the Bankruptcy Code, both of

which are "creatures of Congress's own creation."  Accordingly, when Congress labels the

shared responsibility payment a penalty, not a tax, the payment should be treated as a

penalty in other congressional enactments, including the Bankruptcy Code.  This holding

is required by *NFIB*.  In *NFIB*, the Court noted that "*Amicus* argues that even though

Congress did not label the shared responsibility payment a tax, we should treat it as such

under the Anti-Injunction Act *because it functions like a tax*."  567 U.S. at 544 (emphasis

added).  Yet, the Court rejected that argument in favor of honoring Congress's deliberate

decision to label it a penalty.  *Id*.  The Court recognized that, while the Anti-Injunction Act

applied to "any tax," the shared responsibility payment in the ACA was not a tax as a matter

23

of statutory construction because Congress "chose to describe [the payment] not as a 'tax,'
but as a 'penalty.' There is no immediate reason to think that a statute applying to 'any
tax' would apply to a 'penalty.'" *Id.* at 543 (citations omitted). Nonetheless, the majority
concludes that the penalty should be treated as a tax to give the government a priority in
bankruptcy, employing the same functional analysis rejected by the *NFIB* Court.

Although in *NFIB* the ACA's penalty label was applied to the Anti-Injunction Act
and the other statute involved here is the Bankruptcy Code, the language of the ACA that
labels the payment a "penalty," 26 U.S.C. § 5000A(b), is not textually restricted, such that
the payment is a "penalty" in one statutory context but a "tax" in another. And the Supreme
Court so observed. *See NFIB*, 567 U.S. at 544–45, 564. All three statutes are of Congress's
creation.

To be sure, when determining whether Congress has the *constitutional power* to
impose the shared responsibility payment, the question in *NFIB* became one of
constitutional interpretation. And in discharging that responsibility, the Court conducted a
functional analysis of the shared responsibility payment, concluding that the shared
responsibility payment functions in large part like a tax such that Congress could
constitutionally require the payment. As the Court stated:

> It is of course true that the Act describes the payment as a "penalty," not a
> "tax." But while that label is fatal to the application of the Anti-Injunction
> Act, it does not determine whether the payment may be viewed as an exercise
> of Congress's taxing power. It is up to Congress whether to apply the Anti-
> Injunction Act to any particular statute, so it makes sense to be guided by
> Congress's choice of label on that question. That choice does not, however,
> control whether an exaction is within Congress's constitutional power to tax.

*NFIB*, 567 U.S. at 564 (citation omitted).

In this case, there is no question presented about the scope of Congress's constitutional authority. Rather, the question presented involves the statutory interpretation of the ACA, a congressional enactment, in which Congress distinguished a "penalty" from a "tax." While Congress described numerous exactions in the Act as "taxes," it described the shared responsibility payment as a "penalty." Thus, when determining how the shared responsibility payment must be treated under the Bankruptcy Code, we must yield to Congress's determination that it is a penalty. As *NFIB* observes, in the context of two congressional enactments, we must honor the congressional texts *as written*.

\* \* \*

At bottom, in the Affordable Care Act, Congress deliberately labeled the shared responsibility payment a penalty — as distinct from other payments required under the Act that are labeled as taxes — and therefore, when addressing the payment in the Bankruptcy Code, it must be treated as a penalty. This is what *NFIB* requires; this is what the district court held; and this is what I would conclude. I respectfully dissent.

25